NICHOLS et al. v. GALVESTON COUNTY. (No. 6800.) (Court of Civil Appeals of Texas. Galveston. April 15, 1915. On Motion for Rehearing May 19, 1921. Second Motion for Rehearing Denied Dec. 15, 1921.) Appeal from District Court, Galveston County; Robt. G. Street, Judge. Suit by Galveston County against Fred McC. Nichols and others. Judgment for plaintiff and defendants appeal. Reversed, and judgment rendered. Questions certified to the Supreme Court. Judgment reversing the Court of Civil Appeals. See 228 S. W. 547. Judgment of court below affirmed, on answer of Supreme Court. Chas. H. Theobald, of Galveston, E. A. Wilson, of Brownwood, Marion J. Levy, of Dallas, and Walter E. Cranford, of Galveston, for appellants. James B. & Charles J. Stubbs and Stewarts, all of Galveston, and L. G. Lobit, of Houston, and J. E. Quaid, of El Paso, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against appellant Nichols and the other appellants herein, who were sureties upon the official bond of said Nichols as tax assessor of appellee county, to recover of appellants the sum of $1,576.45 and interest thereon, alleged to be three-fourths of the fees collected by Nichols during the year ending December 1, 1912, in excess of the sum of $2,500 allowed him by law as compensation for his services.

Plaintiff's petition alleges, in substance, that defendant Nichols was, during the year 1912, the duly elected and qualified tax assessor for the county of Galveston, and defendants H. M. Trueheart, John Adriance, and J. Lobit were sureties upon the official bond of said Nichols as tax assessor for said county; that during the year ending December 1, 1912, the said Nichols received fees in excess of the $2,500 allowed him by law, and reported and accounted to plaintiff for three-fourths of all of the excess fees received by him, except the following items: (1) $444.78, as evidenced by drainage district voucher No. 15, being for services for assessing taxes for Galveston County Drainage District No. 2 for 1911. (2) $450.83, as evidenced by drainage district voucher No. 64, being for services for assessing taxes for Galveston County Drainage District No. 2 for 1912. (3) $655.15, as evidenced by drainage district voucher No. 460, being for services for assessing taxes for Galveston County Drainage District No. 1 for 1911. (4) $561.17, as evidenced by warrant No. 11444 upon the general fund of Galveston county, for assessing taxes in Galveston county school districts for the year 1912. The total above alleged as collected amounts to $2,101.91. Appellee sued for said sum less one-fourth, being $1,576.45, and asks judgment for $1,576.45, with interest from December 1, 1912.

The defendant Nichols answered by general demurrer, special exception and special pleas, the defense presented by said exceptions and pleas being that the items upon which the suit is based were received by him and were paid him as compensation for ex officio services, and were not subject to the provision of the fee bill requiring him to account to the county for three-fourths of the excess of fees collected by him. The other defendants, in addition to the plea of defendant Nichols, pleaded further that the payment of said sums to Nichols was a voluntary payment, and there was therefore no breach of his bond in his failure to return plaintiff three-fourths of said amounts.

There is no fact issue in the case. The appellant Nichols was tax assessor for appellee county during the year 1912, and the other appellants were sureties upon his bond as such officer. During said year he collected the several sums named in plaintiff's petition which were paid him by the county for the services above indicated. These items were in excess

of the $2,500 per annum allowed him by the act of the Legislature known as the fee bill, which is now chapter 4, title 58, of the Revised Statute of 1911. He did not report these items in making his settlement with the county for said year, and has never paid or accounted to the county for three-fourths of said amounts. Article 3883 of the statute above cited provides, in substance, that the assessor of taxes in counties which by the census of 1910 were shown to have as many as 37,500 inhabitants shall receive as compensation for his services $2,500 per annum and one-fourth of the fees collected by him in excess of said amount. Article 3893 of said statute contains the following provisions: "It is not intended by this chapter that the commissioners' court shall be debarred from allowing compensation for ex officio services to county officials not to be included in estimating the maximum provided for in this chapter, when, in their judgment, such compensation is necessary; provided, such compensation for ex officio services shall not exceed the amounts now allowed under the law for ex officio services."

The act of the Thirty-Second Legislature relating to drainage districts, and which is now embodied in the Revised Statutes of 1911 as chapter 4, title 47, contains the following: "The county commissioners' court shall provide all necessary additional books for the uses of the assessor and collector of taxes and the county clerk for such drainage district, and charge the cost of same to the said drainage district. It shall be the duty of the county tax assessor, when ordered to do so by the county commissioners' court, to assess all property within such drainage districts and list the same for taxation in the books or rolls furnished him by said commissioners' court for that purpose, and return said books or rolls at the same time when he returns the other books or rolls of the state and county taxes for correction and approval; and, if the said commissioners' court shall find said books or rolls correct, they shall approve the same and order the county clerk to issue a warrant against the county treasurer in favor of said tax assessor to be paid from the funds of said drainage district. The tax assessor shall receive for said services such compensation as the said county commissioners' court shall deem proper to compensate him for the amount of work done: Provided, that said county assessor shall in no event be allowed less than what he is now allowed by law for the like services." Article 2604.

Article 2862 of the Revised Statutes of 1911, which provides for the assessment and collection of school taxes in independent school districts organized under the provisions of the statutes, is as follows: "When a majority of the board of trustees of an independent school district prefer to have the taxes of their district assessed and collected by the county assessor and collector, same shall be assessed and collected by said county officers, and turned over to the treasurer of the independent school district for which such taxes have been collected: Provided, that the property of such districts having their taxes assessed and collected by the county assessor and collector, shall not be assessed at a greater value than that assessed for county and state purposes: Provided, further, that when the county assessor and county collector are required to assess and collect the taxes of independent school districts, they shall, respectively, receive one per cent. for assessing and collecting same."

We think it clear from the provisions of the statutes above quoted that the amounts received by appellant Nichols for his services in assessing the taxes for drainage districts Nos. 1 and 2, and the taxes for independent school districts of Galveston county, were paid to and received by him as compensation for ex officio services in the purview of article 3893 of the statute above quoted, and therefore by the express terms of said article should not be included in estimating the maximum amount of his compensation as tax assessor of Galveston county during the year 1912. The term "ex officio services," used in said article of the statute, does not appear to have been defined by any decision of our courts. The term "ex officio" by its etymology may be defined as from (or by virtue of) office, and its definition as given in volume 12, p. 391, Am. & Eng. Ency. Law, is: "A term applied to an authority derived from official character merely, not expressly conferred upon the individual, but rather annexed to the official position." This is probably a sufficiently accurate definition of the term as generally used, but we think it is manifest that, as used in the statute before quoted, it has a different or rather an additional meaning, and is intended to refer to services, which, though imposed upon the officer because of his official position, are not necessarily incident to the performance of the general duties of his office. The general duties of a county tax assessor are to assess state and county taxes, and the general provisions of the statutes fixing his fees for such services and providing that his annual compensation shall not exceed $2,500 and one-fourth of the fees allowed him after the amount of such fees had reached the sum of $2,500, in view of article 3893, which expressly provides that the provision of the statute limiting the compensation of such officer shall not debar the commissioners' court from allowing him additional compensation for ex officio services, should be construed to apply only to the fees allowed him for the performance of the usual and necessary duties of his office. To hold otherwise would be to ignore the provisions of article 3893. If it does not mean what we have above expressed as its meaning, it is difficult to conceive what was intended by the term "ex officio services."

The Legislature in 1913 amended said article (Vernon's Sayles' Ann. Civ. St. 1914, art. 3893), and as amended it expressly prohibits the commissioners' court from allowing any compensation for ex officio services when the ordinary fees of the office compensate the officer in the amount named by the statute. This amendment indicates that the Legislature construed the former statute as permitting compensation for extra or ex officio services in excess of the maximum fixed by the statute for the usual or ordinary services of the officer. The provisions of the drainage law before quoted expressly provide that the county tax assessor shall receive for his services in performing the extra duties of assessing and preparing separate tax rolls of the drainage districts in his county "such compensation as the said

county commissioners' court shall deem proper to compensate him for the amount of work done." This statute further provides that the amount so allowed the assessor shall be paid out of the funds of the drainage district. The amount to be paid for such services is left to the commissioners' court and is only limited by the judgment of said court as to what amount would in the particular case be proper compensation for the work done. In fixing the compensation of the assessor for assessing the taxes in independent school districts the statute provides that such compensation shall not exceed one per cent. of the taxes assessed.

It is not contended that the amount paid appellant Nichols by the commissioners' court for assessing the taxes for the drainage districts is more than a fair or proper compensation for the work done, nor that the amount paid him for assessing the taxes for the independent school districts of said county was more than 1 per cent. of the taxes assessed. It thus appears that the compensation paid appellant Nichols for his ex officio services in assessing these taxes is not in excess of the amount allowed under the law for such services, and the amounts so paid him were authorized under article 3893 of the statute before quoted, and should not be included in estimating the compensation to which he was entitled under the general provisions of the fee bill. It follows from these conclusions that the judgment of the court below should be reversed, and judgment here rendered for appellants; and it has been so ordered. Reversed and rendered.

### On Motion for Rehearing.

At a former term of this court we reversed the judgment of the trial court in this cause and rendered judgment in favor of appellants. Pending a motion for rehearing by appellee, we certified to the Supreme Court what we regarded as the material questions in the case. The answers of the Supreme Court to these questions, which have been certified to us, are contrary to the conclusions reached by us in our former opinion and require the granting of the motion for rehearing. It would serve no useful purpose to set out or discuss the several assignments presented in appellants' briefs. All of the questions raised are dependent upon and controlled by the answers of the Supreme Court to the questions certified, and these answers require that all of the assignments be overruled, and the judgment of the court below affirmed; and it has been so ordered.

---

BAALMANN v. KARR et al. (No. 22356.)
(Supreme Court of Missouri, Division No. 1. Dec. 19, 1921.) Appeal from St. Louis Circuit Court; Charles B. Davis, Judge. Action by Cora Baalmann against George C. Karr and others. Decree for defendants, and plaintiff appeals. Affirmed.

The plaintiff instituted this suit in the circuit court of the city of St. Louis, seeking to set aside a trustee's sale under a deed of trust, conveying certain real estate in that city to a trustee for the purpose of securing certain notes given for money loaned by the cestui que trust, to the owner of the real estate. Trial

was had before the court, and after hearing the evidence and arguments of counsel in the case it found the issues for the defendant, and rendered a decree accordingly, and in due time and proper form the plaintiff appealed the cause to this court. Plaintiff in her amended petition seeks to obtain a decree setting aside a trustee's foreclosure sale of her real estate situated in the city of St. Louis, a trustee's deed, to have an accounting between the parties and for the redemption of the real estate upon payment, by the plaintiff, of the sum found to be justly due for that purpose, and for general relief.

The grounds alleged by plaintiff in her amended petition on which her cause of action is based are in substance as follows: (1) That defendant Schopp was, at the time of the foreclosure sale and since the execution of the notes and deed of trust under which the foreclosure took place, the holder and owner thereof, or was holding the same as agent for an undisclosed principal; that defendant Schopp was the trustee named in said deed of trust and the trustee who conducted the foreclosure sale; that said Schopp caused his codefendant, George C. Karr, to purchase the property in for Schopp at said sale, and that at the time of the purchase said Karr was acting as agent for said defendant Schopp, or as the agent for the holder and owner of said deed of trust; in brief. that said Schopp was both the seller and buyer of his own said foreclosure sale. (2) That defendant Schopp, the trustee, knew that plaintiff was the owner of said property ever since she acquired same, more than a year prior to the foreclosure sale; that defendant Schopp represented to plaintiff that he was holding the deed of trust and notes secured thereby and that the same should be paid to him; that Schopp assured plaintiff and represented to her that whenever any of the notes became due and payable he would advise and notify the plaintiff of the fact, and thus save her the trouble of keeping track of the dates when any of said notes were due and payable; that Schopp further assured and represented to plaintiff that she could reply upon him notifying her of the fact when any of the notes became due and payable, and that she need not pay any attention to the payment of any of said notes until she was so notified; that plaintiff relied upon these assurances and depended upon him to so notify plaintiff; that these assurances and representations were made for the purpose of lulling plaintiff into a sense of security and to enable Schopp to sell the property without her knowledge; that Schopp, without notifying the plaintiff, and without her knowledge, and without making any demand for the payment of the notes, advertised the property for sale under the power in the deed of trust and sold the same on the 22d day of January, 1919, at the courthouse door, to the defendant Karr, for the pretended consideration of $3,500; that said consideration was wholly inadequate, and that the said real estate at the time of the sale was fully worth the sum of $5,500. (3) It is also averred that the sale was in violation of the terms of the deed of trust, requiring the said property to be sold for cash, in that Schopp executed and delivered to Karr a trustee's deed to said property, without requiring Karr to pay cash there-